UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00628-H

NATASHA JO POWELL                                                 PLAINTIFF

v.

FRED CORNETT                                                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Natasha Jo Powell, brings suit against Defendant State Trooper Fred Cornett for alleged violations of her constitutional and statutory rights. Plaintiff's claims arise out of a sequence of events culminating in her arrest for Criminal Abuse in the Second Degree pursuant to KRS § 508.110.[1] Although the Complaint is unclear as to whether Plaintiff seeks to bring these claims under state or federal law, the Court construes Plaintiff's Complaint as alleging state and federal law claims for false arrest, false imprisonment and malicious prosecution and a state law claim for outrage.[2] Defendant now moves for summary judgment as to all claims. For the reasons stated herein, the Court sustains Defendant's motion.

I.

---

[1] That statute provides,
> (1) A person is guilty of criminal abuse in the second degree when he wantonly abuses another person or permits another person of whom he has actual custody to be abused and thereby:
>> (a) Causes serious physical injury; or
>> (b) Places him in a situation that may cause him serious physical injury; or
>> (c) Causes torture, cruel confinement or cruel punishment;
>> to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless.
>
> (2) Criminal abuse in the second degree is a Class D felony.

KY. REV. STAT. ANN. § 508.110 (1982).

[2] Courts generally treat causes of action for outrage and intentional infliction of emotional distress interchangeably. *See, e.g.*, *Atwell v. Hart Cnty., Ky.*, 122 F. App'x 215, 219 (6th Cir. 2005). The Sixth Circuit has not "ever held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remedial pursuant to 42 U.S.C. § 1983." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005). Plaintiff here has failed to cite a federal statutory or any other authority that provides for a federal claim for outrage in circumstances similar to these. Accordingly, Plaintiff's only remedy for the tort of intentional infliction of emotional distress is pursuant to the Kentucky tort of outrage.

The parties dispute some of the factual circumstances underlying Plaintiff's Complaint, but to the extent that any disputes are material, the Court finds that the Plaintiff's allegations are proven to be unsubstantiated. On January 12, 2011, Defendant received a message from the Kentucky State Police Post in Columbia, Kentucky to contact Social Worker Starr Harris regarding complaints as to Plaintiff's parental behavior. These complaints alleged that Plaintiff was not properly feeding her two-year-old daughter and was locking her in a room. Defendant claims he attempted to contact Plaintiff after receiving this information.

Later that day, Trooper Justin Phillips and Harris inspected Plaintiff's house. Plaintiff was not present, but her friend, Mr. Leedom, was present and watching Plaintiff's two-year-old daughter. According to Defendant, Phillips noted that the lock on the child's door handle was on the outside of the door, the opposite way one typically installs a door handle, and a second hasp lock hung outside the door frame, which was potentially another means of locking the door from the outside. Plaintiff contends that the hasp lock had no eyescrew, and therefore was not a functioning lock. Phillips reported that Leedom attempted to remove and hide the hasp lock during his visit. Defendant contends he tried to visit the house once again that evening, but no one was home.

Plaintiff alleges that Phillips took pictures on his personal camera showing that the child had been recently fed, that Plaintiff had food in the kitchen, and that the child had proper and clean bedding in her bedroom. Philips later testified that he did not observe any violations of the law on this visit.

On January 13, 2011, Trooper Morris Farris and Marion County Deputy Sheriff Tony Belcher visited Plaintiff's home. Farris told Defendant that he went to the back door and heard a child knocking on her bedroom door from inside the room. Upon Plaintiff granting Farris and

Belcher entrance, Farris inquired into why the child's door was locked, but Plaintiff showed the two that the door was not locked. Farris reported that the house was in a dirty condition, filled with garbage and clothes lying on the floor.

Plaintiff states that Belcher did not hear the knocking and did not observe a locked door, but rather witnessed the child hanging on her mother's leg with a drink in hand. In later testimony, Belcher and Farris denied witnessing any criminal violation. Moreover, Defendant himself never spoke with Plaintiff or personally investigated Plaintiff's residence. Nevertheless, on January 14, 2011, Defendant met with County Attorney Lisa Nally Martin, who suggested charging Plaintiff with Criminal Abuse in the Second Degree after hearing Defendant's description of the case. Martin drafted the warrant that was then signed by a judge.

On the same day, Plaintiff called Defendant, asking where her oldest child was located, because unbeknownst to her, Child Protective Services ("CPS") had taken her oldest child into their care. While on the phone, Defendant asked Plaintiff to meet him at a local Hampton Inn without revealing that he had a warrant for her arrest. Defendant contends he did not reveal this information, because he had so much trouble contacting her in the first place. Police officers arrested Plaintiff at the Hampton Inn and transported her to the Marion County Jail, where she stayed for six days. CPS initially placed Plaintiff's children in foster care, but at some point CPS handed the younger child over to her biological father. Plaintiff regained custody of her children on March 30, 2011.

On or around February 23, 2011, the Marion District Court Judge Amy Anderson held a probable cause hearing. Plaintiff, represented by counsel, contested probable cause. The judge found probable cause and bound the case over to the grand jury. On March 21, 2011, a grand jury indicted Plaintiff after finding probable cause. At some point, the state amended the charge

3

from a Class D felony to a misdemeanor. However, on April 4, 2011, the Commonwealth of Kentucky and Powell entered into a written agreement whereby the proceedings against Plaintiff regarding the custody of her children would be resolved pursuant to court-imposed requirements regarding parenting issues and compliance with requests from the Cabinet for Families and Children concerning random drug screens and obtaining a mental health evaluation. Then, on July 27, 2011, the Commonwealth agreed to dismiss the criminal charges without prejudice and apparently with leave to reinstate the charges in the event that Plaintiff failed to comply with the conditions imposed in the juvenile proceedings.

II.

Defendant moves for summary judgment on two grounds: 1) Defendant is entitled to absolute or qualified immunity, and 2) Plaintiff's claims fail as a matter of law. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However,

> the mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden is discharged by demonstrating an absence of evidence to support an essential element of the nonmoving party's case for which she has the burden of proof. *Id.* At this point, the burden shifts to the nonmoving party to establish the existence of a disputed factual element essential to his case. *Id.* The nonmoving party may not rely on mere allegations, "but must come forward with some probative evidence to support its claim." *Lansing Dairy,*

*Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). Defendant has met his burden of demonstrating the absence of a genuine issue of material fact so as to warrant summary judgment on all claims.

III.

Plaintiff alleges that Defendant falsely arrested her and then caused her to be falsely imprisoned for six days, when he enticed her to meet him at the Hampton Inn without disclosing that he obtained a warrant for her arrest based on false information. Under federal law, "claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs." *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988).

> A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983.

*Voyticky*, 412 F.3d at 677 (internal citations omitted). "Arrest warrants in the hands of a police officer, unless facially invalid, are presumed valid." *Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010). To overcome this presumption, Plaintiff would have to show "that in order to procure the warrant, [Defendant] 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements [we]re material, or necessary, to the finding of probable cause.'" *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306.

Kentucky law similarly treats claims for false arrest and false imprisonment as essentially the same. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). Under Kentucky law,

> [a] law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual. Two common examples

5

> of a law enforcement officer's privilege to detain an individual are (1) an arrest pursuant to a warrant or (2) an arrest without a warrant in which the officer has probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it.

*Id.* (internal citations and quotation omitted). "Although generally officers may rely on a facially valid warrant, warrants based on 'bare bones' affidavits—conclusory affidavits lacking any meaningful factual allegations—are exceptions." *Sizemore v. Commonwealth*, 2003 WL 21244308, *2 (Ky. Ct. App. May 30, 2003).

Defendant obtained a warrant prior to executing Plaintiff's arrest. In pursuit of the warrant, Defendant spoke with the Assistant County Attorney for Marion County Martin, who swore in an affidavit that she advised Defendant as to the charges to be made and she drafted the warrant. ECF No. 12-2. In an affidavit prepared for this case, Martin found the case report consistent with Defendant's recitation of the events. *Id.* Other troopers likewise submitted affidavits supporting Defendant's characterization of the relevant events. *See* ECF No. 12-4; ECF No. 12-5. The state court judge signed the warrant.

Plaintiff argues, but fails to show, that Defendant knowingly lied or omitted material facts in his statements to Martin and Judge Anderson during the course of his warrant procurement. However, she also essentially concedes that her contentions as to Defendant's falsifications and omissions are pure conjecture. She states,

> Since defendant's decision to arrest was based solely on his reliance on the information of his fellow officers and those officers did not have information related to a violation of KRS 508.110 or any other crime, the only possible explanation for defendant's actions are that he concealed material facts and provided false information to secure his warrant.

ECF No. 13. Plaintiff has no actual evidence that the information Defendant supplied to Martin and Judge Anderson was false or misleading.

6

The evidence submitted in this case supports Defendant's claim that he truthfully revealed all he knew to Martin. The warrant itself appears facially valid. There are no reasonable grounds to believe that the warrant lacked indicia of probable cause beyond Plaintiff's bare assertions thereof. Plaintiff has failed to sustain her burden given that Defendant has showed the absence of evidence as to an essential element of the claim. Accordingly, the Court finds that Plaintiff's claims for false arrest and false imprisonment are dismissed as a matter of law, because Defendant acted pursuant to and in compliance with a facially valid warrant.

## IV.

To prove malicious prosecution under federal law, "a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or prosecution." *Voyticky*, 412 F.3d 669, 675 (6th Cir. 2005). It has long been the law of the Sixth Circuit that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer," which has the effect of precluding a malicious prosecution claim. *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006)(quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).

Under Kentucky law, probable cause is also an integral and necessary element to prove malicious prosecution. *See Raine v. Draisin*, 621 S.W.2d 895, 899 (Ky. 1981); *Hunt v. Lawson*, 2008 WL 4691052, *5 (Ky. Oct. 23, 2008). "When a grand jury, upon other testimony than that of the prosecutor alone, find an indictment to be a true bill, the presumption is prima facie that, as they, on their oaths, have said that the person indicted is guilty, the prosecutor had reasonable grounds for the prosecution." *Davidson v. Castner-Knott Dry Goods Co., Inc.*, 202 S.W.3d 597, 607 (Ky. Ct. App. 2006)(quoting *Conder v. Morrison*, 121 S.W.2d 930, 931 (Ky. 1939)). Courts

have applied this same principal against police officer defendants. *See Davis v. McKinney*, 422 F. App'x 442, 443 (6th Cir. 2011)(citing *Davidson* for the principle that "under Kentucky law, a grand-jury indictment creates a rebuttable presumption that probable cause existed.").

Here, the record shows two official probable cause findings. First, Judge Anderson found probable cause at a preliminary hearing on the charge of Criminal Abuse in the Second Degree. Second, the grand jury found probable cause against Plaintiff, and Plaintiff has not rebutted the presumption that the prosecution was reasonable in all respects. These two findings, without more, may be quite sufficient to bar Plaintiffs' claims.

Nevertheless, Plaintiff argues that the Defendant made misrepresentations and omissions of fact that led to the probable cause findings. However, no evidence supports this claim. After reviewing the transcripts of both the probable cause and grand jury hearings, Defendant's testimony appears truthful. He testified that he was unsure of whether the hasp lock was functional; that Phillips relayed information that Leedom covertly removed the hasp lock; that the child knocked on her bedroom door after Plaintiff granted Farris entrance to the house; that Plaintiff showed Farris that the child's bedroom was not actually locked; that he never personally met Plaintiff or her children prior to Plaintiff's arrest; and that at no point in the investigation did any police officer witness the child locked in her room.

Nevertheless, Defendant and Martin concluded that Plaintiff had committed Criminal Abuse in the Second Degree by locking her child in the room. The door handle was installed in an inverted manner; Leedom removed the hasp lock from the outside of the door arguably in a covert manner; and the child knocked on her bedroom door when Farris visited. Moreover, according to the grand jury testimony, one of the troopers reported that the conditions of the bedroom suggested that the child had been locked in the room in an unfit environment;

8

specifically, it appeared to the trooper that the child apparently had been peeling wallpaper off the side of the wall. ECF No. 13-3. After a review of the transcript, it is clear that the grand jury had sufficient evidence to find probable cause. There is no evidence that the grand jury was improperly constituted or unfair.

Secondarily, Plaintiff's Kentucky malicious prosecution claim fails because Plaintiff fails to show that Defendant acted with malice.[3] *Raine*, 621 S.W.3d at 899. Malice is "the intentional doing of a wrongful act to the injury of another, with an evil or unlawful motive or purpose." *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40 (Ky. 1931). While the focus of false arrest and false imprisonment claims rests on Defendant's conduct in the initial seizure or detention of an individual, malicious prosecution focuses on the "the institution or continuation of original judicial proceedings . . . [and] administrative or disciplinary proceedings." *Raine*, 621 S.W.3d at 899. Therefore, the probable cause inquiry in this case focuses on Defendant's conduct at the time he initiated the litigation.

According to the affidavits submitted, Defendant met with Martin to discuss the investigation into Plaintiff's childcare, and Martin suggested the charge to bring against Plaintiff. Martin filled out the warrant that the judge signed. Plaintiff does not controvert Martin's affidavit. Plaintiff does not present any substantiated allegations as to an improper motive on behalf of Defendant in pursuing this charge. It is clear from this evidence that Defendant did not act with any malice in prosecuting Plaintiff for Criminal Abuse in the Second Degree.

Accordingly, Plaintiff's malicious prosecution claim must fail under both federal and Kentucky law.[4]

---

[3] A federal claim for malicious prosecution does not require proof of malice. *Sykes v. Anderson*, 625 F.3d 294, 310 (6th Cir. 2010).
[4] It is unlikely that Plaintiff satisfies the other elements of the claims for malicious prosecution under both Kentucky and federal law. However, the Court declines to discuss the claims further as the above explained deficiencies are fatal to her claims.

V.

Under Kentucky law, Plaintiff can establish a prima facie case for outrage by showing the following elements:

> (1) the wrongdoer's conduct must be intentional or reckless;
> (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> (4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004). As evidenced by the Court's determination that Defendant's conduct did not amount to false arrest, false imprisonment, or malicious prosecution, it follows that Defendant did not act outrageously and "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 789 (quoting RESTATEMENT (SECOND) OF TORTS § 46). Defendant is entitled to rely on the statements of his colleagues in executing his law enforcement duties, so the fact that he never witnessed Plaintiff committing a crime is inapposite. Martin declared in her affidavit that Defendant's recitation of the events is consistent with the investigation, a statement that Defendant's colleagues corroborated in their affidavits. Defendant may not have been completely forthcoming as to his possession of the warrant, but police officers are not required to disclose every facet of an investigation to potential criminal offenders in the course of carrying out their law enforcement duties. Defendant was not responsible for the removal of Plaintiff's children, a duty assigned to another branch of the Kentucky government. At the least, this was not outrageous police conduct. Plaintiff's claim for outrage fails as a matter of law.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is SUSTAINED, and Plaintiff's claims for false arrest, false imprisonment, malicious prosecution and outrage are DISMISSED WITH PREJUDICE.

This is a final and appealable order.

cc: Counsel of Record